UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMY CARGILL, | Case No.  1:25-cv-00415-KES-FJS |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO SUPPLEMENT EXPERT REPORTS |
| v. | |
| COUNTY OF FRESNO, et al., | (ECF No. 32.) |
| Defendants. | |

Plaintiff Jeremy Cargill ("Plaintiff") moved to supplement his expert reports. (ECF No. 32.) At bottom, Plaintiff seeks an order establishing that the tardy service of a preliminary life care plan from witness Andrea Nebel, RN, BSN, CNLCP ("Nebel") does not subject Nebel's opinions to automatic exclusion under Rule 37(c) of the Federal Rules of Civil Procedure. In the alternative, Plaintiff seeks an order modifying the scheduling order pursuant to Rule 16(b)(4). Defendants County of Fresno, Sheriff Margaret A. Mims, Lieutenant McCoy, Officer Sunny Armenta, and Sergeant Luis Figueroa (collectively "Defendants") oppose this motion. (ECF No. 33.) The court, after considering the parties' submissions and determining that oral argument was not necessary (ECF No. 34), finds that Plaintiff's failure to timely serve information required by Rule 26(a)(2) was harmless and grants Plaintiff's motion in part, holding that the opinions tied to Nebel's 2025 life care plan are not excluded on timeliness grounds under Rule 37(c).

## I.      PROCEDURAL BACKGROUND

Two life care plans are at issue here: one from 2024 and another from 2025. Defendants have had Nebel's 2024 preliminary life care plan since January 30, 2025, when it was provided to Defendants as an exhibit to Plaintiff's supplemental mediation brief. (ECF No. 32 at 5; ECF No.

32-2.)

On July 9, 2025, the court issued a scheduling order requiring Plaintiff to make his mandatory Rule 26(a)(2) expert witness disclosures and submit his reports no later than December 10, 2025. (ECF No. 16.) Plaintiff served Defendants with an initial disclosure of expert witnesses that identified Nebel and attached Nebel's Rule 26 report. (ECF No. 32-5.) Nebel's Rule 26 report, a letter dated December 8, 2025, addressed to Plaintiff's counsel, referenced as enclosed the life care plan and stated that the "life care plan details current and future medical and non-medical lifetime care needs and costs thereof, related to the injuries Jeremy Cargill sustained on 08/10/2020" and provided a descriptive methodology of how the life care plan was created. (ECF No. 32-5 at 5.) No life care plan was enclosed as indicated and Defendants' counsel inquired as to the missing life care plan on December 29, 2025. (ECF No. 33-1 at 2.) Upon learning that the life care plan was omitted from Plaintiff's December 10, 2025, transmittal, Plaintiff produced the 2025 life care plan to Defendants that same day. (ECF No. 32 at 8.)

The court's scheduling order required Defendants to produce supplemental expert disclosures on January 23, 2026. (ECF No. 16.) After receipt of Nebel's 2025 life care plan, Defendants' expert Derrick P. Olzack, PA-C, MMS, CLCP, ("Olzack") analyzed Nebel's 2025 life care plan as a part of his supplemental expert disclosure. Olzack's disclosure was served on January 23, 2026. (ECF No. 32 at 8; *see* ECF No. 32-7.)

On January 28, 2026, five days after submitting their supplemental expert disclosures, Defendants served an objection to Plaintiff's untimely expert disclosure. (ECF No. 32 at 8; ECF No. 32-8.) Defendants did not seek relief from this court to exclude Plaintiff's life care plans between the time that Plaintiff served the 2025 life care plan and the time this motion was filed.

The court's July 9, 2025, scheduling order set the expert discovery cutoff for February 20, 2026. (ECF No. 16.) That deadline was recently extended to August 28, 2026. (ECF No. 37.) The court understands that Defendants noticed Nebel's deposition for May 6, 2026. (ECF No. 35 at 5.)

### A.    Nebel's Life Care Plans

The 2025 life care plan was prepared with the following additional information: (1) a follow-up Facetime assessment with Plaintiff on November 7, 2025; (2) collaboration with

2

Plaintiff's recently retained neurologist Jude Theriot in addition to prior collaborators neuropsychologist Arthur Joyce and neurologist Riaz Tadia; (3) cost-of-living calculations based on Dallas, Texas, Plaintiff's current residence; (4) Plaintiff's updated medical treatment including a diagnosis of major depressive disorder, single episode, severe; (5) life expectancy calculations based on the 2025 Life Expectancy National Vital Statistics Report increasing life expectancy by approximately 1.1 years; and (6) Plaintiff's updated inpatient comprehensive rehabilitation program including only the Centre for Neuro Skills, Dallas, Texas, and eliminating the prior option of Neuro Restorative. (ECF No. 32 at 6-7; ECF No. 33 at 5.) The 2025 life care plan adds an additional $750,303 in opined costs. (ECF No. 33 at 5.)

B.   Plaintiff's Motion to Supplement Expert Reports

Apparently in response to (1) Defendant's January 28, 2026, objection to Plaintiff's use of the 2025 life care plan and (2) other meet-and-confer efforts thereafter, Plaintiff filed this motion to supplement expert reports. (*See* ECF No. 32-8; ECF No. 32-1 at 5-6.)

Plaintiff's motion to supplement expert reports (ECF No. 32) seeks leave to use at trial either Nebel's 2024 preliminary life care plan *and/or* the 2025 life care plan.[1] (ECF No. 32 a 2.) In the alternative, the motion seeks an order modifying the court's scheduling order. (ECF No. 32 a 2.) Plaintiff argues that admission of the 2025 life care plan is harmless because (1) it does not add new legal theories or substantially alter the opinions that were previously raised in the 2024 preliminary life care plan, (2) any updates in the 2025 life care plan were easily anticipated based on Plaintiff's injuries and routine changes, (3) Defendant knew about and had possession of the 2024 preliminary life care plan since January 30, 2025 (*i.e.,* for over one year), (4) Plaintiff promptly produced the 2025 life care plan upon discovery that it had not been attached to Nebel's expert disclosures (nineteen days after expert disclosures were due), (5) Defendants' expert

---

[1] Although Plaintiff primarily focuses on the 2025 life care plan in this motion, Plaintiff also asks disjunctively and conjunctively for the availability of the 2024 preliminary life care plan for use at trial. While the 2024 report was served in Plaintiff's supplemental mediation brief, it was apparently not served in this litigation. And neither party indicates that Olzack reviewed the 2024 preliminary life care plan in his 2026 supplemental expert disclosure. The court, therefore, does not find good cause on this record for deeming opinions tied solely to the 2024 life care plan available for trial. Fed. R. Civ. P. 37(c).

3

Olzack prepared and submitted a rebuttal report based on the 2025 life care plan, and (6) expert discovery is still open and Defendants noticed Nebel's deposition for May 6, 2026. (ECF No. 32 at 6-7, 10-12; ECF No. 35 at 5.)

Conversely, Defendants argue that Plaintiff's failure to disclose Nebel's life care plan was not substantially justified because a lack of diligence does not constitute substantial justification and the information in Nebel's 2025 life care plan was available to Plaintiff before the disclosure deadline. (ECF No. 33 at 4.) Defendants also argue that allowing the 2025 life care plan for use at trial is not harmless because there are substantive changes including the following: (2) the 2025 life care plan increased the estimated lifetime cost by $750,303, (2) Plaintiff's depression diagnosis was upgraded from mild to severe, (3) neurologist Jude Theriot was added as a consultant for the 2025 life care plan, (4) cost calculations were shifted from Lindale to Dallas, Texas, (5) Plaintiff's life expectancy was extended approximately 1.1 years, and (6) one of two rehabilitation options was eliminated. (ECF No. 33 at 5.) Defendants argue that these substantive changes deepen and strengthen the original report and do not constitute a proper supplementation under Rule 26(e). (ECF No. 33 at 6.)

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. *Cedant v. United States*, 75 F.4th 1314, 1319 (11th Cir. 2023). Pursuant to Rule 26(a)(2)(A), parties must disclose any person whom they may call as an expert witness during trial. If the party specifically employed or retained the witness to give expert testimony in the case, or if the witness is an employee of the party and the employee's duties regularly involve giving expert testimony, the expert disclosure must include a report from the witness. Fed. R. Civ. P. 26(a)(2)(B). The report must contain, among other things, (1) "a complete statement of all opinions to be expressed and the basis and reasons for them," (2) "the facts or data considered by the witness in forming them," and (3) "any exhibits that will be used to summarize or support them." *Id*. The purpose of Rule 26's mandatory expert disclosure is to eliminate unfair surprise and to conserve resources by providing the parties with the information needed to prepare for trial and make informed decisions about settlement. *Beller ex rel. Beller v. United States*, 221 F.R.D.

4

689, 693-94. (D.N.M. 2003). The court may direct the timing and sequence of expert disclosures by court order. Fed. R. Civ. P. 26(a)(2)(D). A party must supplement or correct their Rule 26(a)(2) disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

A party who fails to disclose or supplement information required by Rule 26(a)(2) will not be allowed to use that information at hearing or at trial "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The advisory committee notes for Rule 37 state that the preclusion of sanctions for violations that are "harmless" is "needed to avoid unduly harsh penalties in a variety of situations." Fed. R. Civ. P. 37(c)(1) advisory committee's notes to 1993 amendment. Examples of "harmless" include "the inadvertent omission from a Rule 26(a)(1)(A) disclosure of the name of a potential witness known to all parties" or where there was "the failure to list as a trial witness a person so listed by another party." *Id.*

### III.   DISCUSSION

Upon notice, Plaintiff promptly remedied the omission of 2025 life care plan. Moreover, the court cannot find harm sufficient to warrant exclusion of opinion testimony tied to the 2025 life care plan.

#### A.   Substantial Justification

Plaintiff timely remedied the omission of Nebel's 2025 life care plan. Plaintiff intended to include Nebel's 2025 life care plan in his December 10, 2025, disclosure but inadvertently failed to do so even though the life care plan was referenced as an enclosure to Nebel's Rule 26 report. (ECF No. 32-1 ¶ 3 (Ex. D.)) On the same day Defendants alerted him that the life care plan was not enclosed, Plaintiff provided Defendants with a copy of the 2025 life care plan. (ECF No. 32-1 ¶ 6; ECF No. 33-1 ¶ 5.) This supplement was a timely response on Plaintiff's part when he realized that his disclosure was inadvertently incomplete. The court does not see evidence that Plaintiff's counsel was gaming the deadline or sandbagging Defendants.

B.    Harm

The court is not persuaded that the late disclosure harmed Defendants. Defendants were aware that Nebel prepared the 2024 life care plan and should have anticipated that some similar work product would be produced in Plaintiff's expert disclosures in December 2025. Indeed, Defendant's expert served a rebuttal report exceeding fifty pages that analyzes Nebel's 2025 life care plan, despite having nearly three weeks less time to prepare the report. In spite of Defendants' contrary assertions, there seems to be modest substantive/methodological differences between the 2024 and 2025 life care plans other than changes in Plaintiff's life such as his change of residence from Lindale to Dallas, Texas, resulting in a higher estimated cost of living and the elimination of one rehabilitation option, an updated life-expectancy resulting in higher lifetime costs, and an updated medical diagnosis, all of which were based on changes in Plaintiff's life circumstances. (ECF No. 32-1 ¶ 4.) The court sees no reason why Nebel should have anticipated that Plaintiff would make those changes when the 2024 initial life care plan was served.

The impact of another neurologist consultant also seems modest because Nebel's 2024 life care plan already utilized the services of a neurologist consultant and a neuropsychologist. Considering that Defendants did not object to Nebel's 2025 life care plan until five days after their rebuttal reports were served and did not seek this court's assistance in either seeking more time to respond or excluding the 2025 life care plan until their opposition to Plaintiff's instant motion, the court is not persuaded of harm. Moreover, because Defendants have the opportunity to depose Nebel regarding the 2025 life care plan and Plaintiff's late disclosure does not impact the court's schedule, the court finds that Defendants have not been harmed and the opinions tied to the 2025 life care plan should not be excluded under Rule 37(c) on grounds of timeliness.

IV.    CONCLUSION AND ORDER

The court emphasizes that federal trial courts routinely set schedules and establish deadlines for efficient resolution of cases in a system often bogged down by heavy caseloads. "Those efforts will be successful only if the deadlines are taken seriously by the parties, and the best way to encourage that is to enforce the deadlines." *Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1060 (9th Cir. 2005). Although these deadlines should not be enforced mindlessly,

"[p]arties must understand that they will pay a price for failure to comply strictly with scheduling and other orders, and that failure to do so may properly support severe sanctions and exclusions of evidence." *Id*.

In this instance, the progress towards the closure of discovery and resolution of the case was not frustrated because Defendants timely served rebuttal reports and can depose Nebel despite Plaintiff's late disclosure. To be sure, the court is disappointed in Plaintiff's original omission of the 2025 life care plan. Conversely, the court appreciates Defendants' efforts to clarify the incomplete report and their expert's efforts to expeditiously prepare a timely updated cost comparison based on the 2025 life care plan. But invoking exclusion under Rule 37(c) here is too harsh a consequence.

Based on the foregoing, Plaintiff's motion to supplement expert reports (ECF No. 32) is HEREBY GRANTED IN PART AND DENIED IN PART.

The motion is:

1.    DENIED as to the 2024 preliminary life care plan;

2.    DENIED as to modifying the scheduling order;

3.    GRANTED as to the 2025 life care plan; and

4.    The limited grant of this order addresses only whether the opinions tied to the 2025 life care plan are subject to exclusion under Rule 37(c) because of that plan's tardy disclosure. The court states no opinion on the admissibility of those opinions or alternative grounds for exclusion that the parties might raise in future motions or at trial.

IT IS SO ORDERED.

Dated:    **May 15, 2026**

_____
UNITED STATES MAGISTRATE JUDGE